The next case for argument is 23-2155 eBuddy Technologies v. Stewart. Good morning, may it please the court, Steve Slither for the appellant, eBuddy Technologies. The claims of the 395 and 453 patents require an aggregated contact list that is maintained, stored, and provided to a display device. Can I ask you a housekeeping question about this? There's so many issues that you've raised in this case. There are at least three claim construction issues that deal with different limitations, right? Yes, Your Honor. So is it your view that if you win on any one of these, it's a vacate? Well, yes, with regard to the construction of aggregated contact list, that applies to both patents. High and low-level networks also applies to both patents. With regard to the construction of messaging service provider, that would only apply to the 395 patent. That term is only used in the one patent, so.  Sorry. Here, there's no substantial evidence that O'Dell discloses an aggregated contact list. The touchstone in the 395 and 453 patents is a single aggregated contact list. O'Dell discloses, at most, only multiple non-aggregated lists, or arguably an aggregation of separate and distinct lists, but that's still not a single list. The board's findings and the director's arguments all require that an aggregated list comprise multiple different lists, because that's all that O'Dell discloses, multiple separate lists. O'Dell specifically describes what it shows, which are separate buddy lists, not a single aggregated contact list. For example, O'Dell says it displays buddy lists for all linked accounts. That's at column 8, 33 through 34. Regarding certain figures in O'Dell, it describes interfaces for showing buddy lists for multiple linked accounts, and it describes an interface that's used to access a unique buddy list. But before we get to O'Dell, why don't we go to the claims themselves and the specification, and where you get your claim construction based on those items. So the 395 and 453 patents are directed to a technique for contact list aggregation across a plurality of different networks, and that's at column 1, lines 61 through 63. So there it talks about what these patents are directed to, is aggregating into a single list contacts from other sources, networks, or messaging services. Where in the reference or where in the patent does it talk about aggregating the contact list into a single integrated list? So for example... Because as I understand it, that's your argument, that it should be interpreted to mean a single integrated contact list. That's correct, Your Honor. So where is it, where is there any suggestion that that's the proper interpretation? Yes, Your Honor. So for example, claim 1 requires an aggregated contact list that comprises of first contacts from a first contact list and a second contact list. Additionally... How does that answer? Yeah, that doesn't mean it's a single integrated list, as long as it's aggregated. Aggregated means pulled together. Yes, and so that's what the patent is directed to, is pulling together these disparate or separate lists into a single list, and so that's shown, for example, at figure 4A, and I'll reference the 395 patent, the specifications are the same for both. In figure 4A, what you see is an aggregated list, and it shows, and we've colorized it in our briefing so it stands out, but there are contacts that are taken from three separate sources that are put into a single aggregated list. But doesn't 4A, doesn't the specification refer to the figure as a multi-network IM display? It doesn't call it an aggregated contact list, does it? I don't, I think that is correct, but that is the aggregated contact list. That is a display of the aggregated contact list. And we're in the specification, how do we know that? Well, we also know that in figure 5, it talks about... Well, let's stick with figure 4A. Is that all, is it just you're telling us that it means an aggregated contact list, or is there something in the specification that would give support to your conclusion? Well, the fact that it talks about taking these contacts from different sources and putting them into, and displaying them as that single list that's shown in figure 4A is a support for the aggregated contact list. But it never actually says, it never refers to that list as being an aggregated contact list. For figure 4A, it does not. But if you go to figure 5, the flowchart there talks about gathering these contact lists and then displaying an aggregated contact list. Okay, and how does that help you? Well, that goes to the point that the aggregated contact list is a collection, a gathered collection of these contacts from different sources into the single integrated whole that we talk about. One of the problems is just the way the claim is written, where it says, you know, there's an aggregated contact list that comprises the first contact list and the second contact list. I mean, that's pretty broad, right? It could be, but in this context, I think what it's talking about is that it takes these contact lists from other networks or messaging services, and it puts them together into the aggregated contact list that's claimed. So here, what Odell talks about is this concept of buddy lists, and there's no disclosure in Odell that it has, it ever aggregates those separate buddy lists into a single aggregated list. The board and the director's arguments talk about Odell's figures for C, 4A through C, but specifically looking at 4C, where it shows a buddy list for two separate users here, but that's simply the display of two separate lists, not an aggregation into a single aggregated contact list. So displaying multiple separate lists does not disclose displaying a single aggregated list. Also relevant to Odell's lack of disclosure of any aggregated contact list is that the claims require that the aggregated contact list be stored and maintained. So even if the board was correct that this display, for instance, in figure 4C of Odell, somehow was an aggregated contact list, that there's still no disclosure in Odell that an aggregated list is stored. But all of these arguments you're making are based on your claim construction and not the board's claim construction. We would, in order to appreciate or to adopt or consider the arguments you've just made in the past two minutes, would require a reversal of the board's claim construction, right? I just want to understand what you're arguing. Yes. So I think, yes and no. So let me address that. What the board said with regard to aggregated contact list is that it is a list, a contact list resulting from gathering and collecting contacts from multiple contact lists. So there the board recognized that the aggregated contact list has to be a single list. However, the board then goes on to say that the aggregated contact list need not be a single or integrated list. So that alone, I think, is a reversible error in that, on the one hand, the board says the aggregated contact list has to be a list, then a page or two later says it need not be a single list. That's important here because if there is... Well, I think the distinction they were trying to make was between bringing together two lists and integrating them into one. No requirement that the list be integrated as long as they are aggregated. Meaning brought together from different sources into one. Important to that point, though, is that the claims require an aggregated contact list. So a collection of lists is still not an aggregated contact list. But as the patent describes, the list can be broken into different folders, and it's still an aggregated list. Yes. So why is it that the aggregated list... Why are you arguing that the proper claim construction is that the list has to be not only aggregated but integrated as a single list when, in fact, there's discussion of different folders, which is the opposite of a single integrated list? Well, organization within a single list is still just a single list. So how you move with regard to folders, how you move the contacts around within the list still is only a single list. So I think there the board missed the point with regard to the discussion of folders in the patents. What in the patent they're talking about is being able to organize within the single list. That doesn't imply that you could have multiple lists and still have a single aggregated contact list. And I see I'm into my rebuttal time already, but just briefly, there's also the concept of a network contact database in the claims. What the board pointed to there was Odell's account linking database, and there's no substantial evidence that supports that finding. What the account linking database stores is information about a buddy list. There's no disclosure that the account linking database stores the user's buddy lists, and that's confirmed by Odell's disclosure that talks about information about the user's buddy lists includes account linking information, the alias screen names that are linked, and other linking attributes, but no mention that the buddy lists are stored at the account linking database. Quickly with regard to messaging service provider, the experts for both sides agreed that a messaging service provider could be a business or entity that provides a service. Here the board conflates networks, messaging services, and messaging service providers, but those terms have different meanings in the claims, and the board vitiates the separation of those terms when it finds that, when it defined the messaging service provider as the computer system or platform for providing a messaging service. With that, I'll stop here and support those questions. Thank you. Thank you. Good morning, your honors, and may it please the court, Peter Ayers on behalf of the United States Patent and Trademark Office. There have been a lot of issues raised here today, as well as in the brief. I'll try to get through them as quickly as I can, because it seems as if- Well, your friend spent the bulk of his time talking about this first issue of abrogated contact lists. Why don't you go to that? I will start with that, since that seems to be the main issue in the case. The board gave that term its plain and ordinary meaning, aggregated meaning, gathered or collected, as has been discussed. My friend does not dispute that that's the plain and ordinary meaning of aggregated. Then the only question is, where do these contacts come from? To your point, Judge Stoll, the claim is quite clear that what gets aggregated are the contact lists themselves. In claim one, it says it maintains an aggregated contact list that comprises a first contact list associated with the contact information from the first message service provider, and a second contact list from the second message service provider. The claim itself indicates that it doesn't have to lose sight or memory of the sources of the contacts themselves. We see that both in the 395 patent, where it has that separate column on the right-hand side, which indicates the source of the associated contact. I would also point out that, as Judge Prost noted, that figure 4A, which my friend relies on almost exclusively of the 395 patent, does not refer to that display, figure 4A, as an integrated contact list. It's referred to as a multi-network IM display. Very little intrinsic evidence to support their proposed claim construction. Unfortunately, there's just very little discussion in the patent itself about how these claims are aggregated. I point the court to column 6, lines 39 through 42, where it just says that the databases are accessed in such a way that a list of contacts stored in the network contacts database 312 is aggregated. There's no discussion about it has to be integrated, it has to be formed into a single integrated list. Then it also goes on to say, and then it's displayed on the display. I think that's another important point that claims distinguish between the aggregation step and the display. Those two in the board recognize that. As far as O'Dell teaching an aggregated contact list, I think that falls with the claim construction. I don't think there's really any separate arguments there. Under the board's claim construction, I think there's clearly substantial evidence. Also, there is substantial evidence to support the board's finding that O'Dell's servers 378 store and maintain the contacts. That's at O'Dell, APPX 2764, column 7, lines 20 through 40, as well as Willis's supporting testimony. As far as the network contact base, that too, there's substantial evidence to support the board's finding. There I would point to that same passage where literally O'Dell teaches, quote, that account linking server interacts with the account linking database 380, which stores and maintain buddy list. It literally says exactly the opposite of what eBuddy argues here on appeal. That's at APPX 2764. Finally, with respect to the messaging service provider, another claim construction dispute, the problem here is that there's just literally no intrinsic support for this. This provider distinction was added by amendment. That term does not appear in the original specification. The patent itself is focused almost exclusively on the network infrastructure. It says that these are separate and distinct messaging services that are provided over those individual networks, and that's essentially the construction that the board gave that term. I think I've hit all of the issues that were covered here today, and I'm happy to take any questions from the panel. Thank you. Okay. Thank you very much. So, I think key to the, again, to the aggregated contact list is that a list has to be a list. It can't be multiple lists, but that's exactly what the board has told us that it can be, is that a list can be multiple lists, and that's just not the case. With regard to the term aggregated, that does require that contacts from separate lists, including related to a first network or a second network, are brought together, but they still have to be brought together into the single aggregated contact list. If we're talking about storing and maintaining the aggregated contact list, what you won't find in ODEL is any mention that the buddy lists are stored in the account linking server, and I believe my friend referred to ODEL's specific language of ODEL at column seven, and what that says is that the account linking database stores and maintains user buddy lists and account linking information. So there it's not talking about storing buddy lists, it's talking about storing buddy list information, and as I mentioned before, it provides examples of what that information is, and none of that describes the buddy lists themselves. With regard to messaging service provider, what the board has done is construe that term to encompass or overlap at least the networks and messaging services that are separately claimed in the 395 and the 453 patents. Messaging service provider is a distinct term, and it should have a separate meaning from the other terms that are used, and again, the experts agreed that a messaging service provider could be a business or an entity, and here the board is simply incorrect in its construction. Thank you. Thank you, Your Honor. I thank both sides. The case is submitted.